J. B. Clover v. Commissioner.
Clover v. Commissioner
Docket No. 99144.
United States Tax Court
1942 Tax Ct. Memo LEXIS 51; 1 T.C.M. (CCH) 212; T.C.M. (RIA) 42648; December 10, 1942
*51 George G. Witter, Esq., Citizens Nat'l Bank Bldg., Los Angeles, Calif., for the petitioner. Samuel Taylor, Esq., for the respondent. STERNHAGEN Memorandum Findings of Fact and Opinion The Commissioner determined an income tax deficiency of $545.36 for 1934 and an income tax deficiency of $13,130.24 and a penalty of $6,565.12 for 1935. Petitioner assails the determination of gain in the condemnation of water rights. Findings of Fact Petitioner, a construction engineer, is a resident of Los Angeles, California, and filed his income tax returns for 1934 and 1935 in the Sixth District of California. In 1918, he entered into a contract with the Mono Valley Improvement Company to complete within three years the construction of a thirty-mile canal in Mono Basin. This project had been started about 1912 for the irrigation of desert land, and the Mono Valley Improvement Company had previously agreed to construct the canal for the Rush Creek Mutual Ditch Company. In consideration for petitioner's promise to do this work, the Mono Valley Improvement Company agreed to transfer to him 20,000 shares of Rush Creek Mutual Ditch Company, grading and camp equipment, promissory notes for a face *52 amount of $56,730.25 payable to the Mono Valley Improvement Company and secured by 4,000 shares of Rush Creek Mutual Ditch Company, a deed to 480 acres and a contract of purchase for 428 acres in Mono County, and all outstanding shares of the Sierra Land and Water Company. During 1918, petitioner received 18,169 shares of Rush Creek Mutual Ditch Company; the promissory notes, then in default; a deed to the 480 acres, which had riparian rights on Rush Creek and littoral rights on Mono Lake; and the 1,000 outstanding shares of Sierra Land and Water Company. At the time of receipt, the fair market value of the riparian rights in the 480 acres was $2,957; that of the littoral rights was nil. Petitioner in years before 1929 realized $28,445 in sales of some of the Rush Creek Mutual Ditch Company shares, collected $710.33 on the promissory notes, and in 1936 sold the 480 acres, without riparian or littoral rights, for $3,500. He realized nothing from the Sierra Land and Water Company shares and did not receive the other consideration mentioned in the contract. The Mono Valley Improvement Company ceased business in 1920. During the years 1919-1935, petitioner was engaged in construction *53 of the canal and also of lateral feeder ditches, not required by his contract. Some of the feeder ditches crossed his 480 acres which he used as headquarters for the construction work and, to some extent, for pasture. He kept no books of account for the work, but has checks and loose memoranda showing disbursements. The total cost to petitioner of the construction work was $57,108.70. He filed no income tax returns for any of the years 1918 to 1933, inclusive. Prior to 1930, the city of Los Angeles entered upon a large project for the use of the waters of Mono Basin. Water rights were in some instances acquired by contract and in others by condemnation. In 1933, the city contracted to purchase from Nev-Cal Securities Company and other corporations their land holdings and water rights in the Basin. The contract provided inter alia that $2,230,000 of the purchase price be paid in escrow and held until awards for condemned properties should be fixed. It provided further that $100,000 of such awards be borne by the city and any excess by the sellers; special provisions covered several contingencies. On June 23, 1934, a judgment condemning the water rights of petitioner and others *54 was entered in the city's favor. By it petitioner was awarded $68,000 as compensation for his riparian rights in the 480 acres and $20,000 as compensation for his littoral rights. Of the $68,000 award, petitioner received $62,375 in 1934 and $5,625 in 1935, the latter having been impounded pending settlement of an adverse claim. On November 21, 1934, petitioner filed notice of appeal from that part of the judgment awarding him $20,000 for the littoral rights. On May 28, 1935, while the appeal was pending, petitioner sold and assigned all his right, title and interest in the $20,000 award to Nev-Cal Securities Company, stipulating and agreeing that the assignee might prosecute any appeal or other proceeding in its own name. Petitioner made this assignment "for and in consideration of the sum of Twenty Thousand Dollars ($20,000.00) to him in hand paid, by Nev-Cal." On the same date, he received from Nev-Cal $41,000 "as consideration for the dismissal of appeal and waiver of right to appeal" by him. Petitioner filed a dismissal of the appeal and also a release and discharge of the city, the Department of Water and Power of the city, and the water and power commissioners from all liability *55 growing out of the condemnation of his interest, "for and in consideration of the payment into court of the sum of Twenty Thousand Dollars ($20,000.00) in satisfaction of judgment and the sum of Two Hundred Seventy-seven and 50/100 Dollars ($277.50) costs * * *, and in consideration of the payment to [him] of an additional sum of Twelve Thousand Dollars ($12,000.00) by the Department of Water and Power of the City of Los Angeles." As expenses of the condemnation proceedings, petitioner paid $28,948.40 in 1934 and $5,625 in 1935. Before, during and after the condemnation proceedings, petitioner occupied a leased office equipped with a telephone. He used the office and telephone during the period of the proceedings. In 1934, he paid $240 for office rent and $175.95 for telephone service. On his income tax returns filed for 1934 and 1935, petitioner stated that his books were kept on a cash basis. For 1934, he reported gross income of $68,000 "from City of Los Angeles account damage to property" and deducted a like amount as damage to property. For 1935, he reported $55,000 "Damage to property by severance of water rights" and deducted a like amount as damage. He claimed no loss from *56 performance of a long-term contract. Opinion STERNHAGEN, Judge: The petitioner filed no return for any year between 1917 and 1934. On his 1934 separate return, the total gross income shown was $69,640, on which one item was $68,000, "from City of Los Angeles account damage to property"; and the total deductions were $68,879.49, of which one item was $68,000, described as "damage to property by City of Los Angeles." The personal exemption of $1,250 more than offset the net income of $760.51 and no tax was shown. The Commissioner determined a deficiency amounting to $545.36, by finding an adjusted net income of $10,965.69, computed as follows: (a) Adjustment is made to include taxable profit realized as the result of damages awarded upon the condemnation of riparian rights appurtenant to certain land owned in Mono County, California. The results of this transaction were reflected in your in your return as a non-taxable transaction by reason of reporting income from this source in an amount of $68,000.00 and a corresponding loss allegedly sustained as damages to the property. Computation of the profit is set forth hereinafter. Award of damages for riparian rights to 480 acres of land
$68,000.00
Less: Sum impounded by the Superior Court of Tuolomne County pending settlement
of a question raised by the administrator for the estate of Louis Samaan who
claimed an interest in this land
5,625.00
Net amount received during 1934
$62,375.00
Less: Legal fees paid in connection with the condemnation proceedings
$26,735.32
Value of water rights severed from land
1,622.40
28,357.72
Net profit from severance of water rights from the land
$34,017.28
*57 The water rights having been acquired May 28, 1918 were held over ten years. The profit indicated above is therefore subject to the capital gain limitation of 30 per cent which produces a taxable profit of $10,205.18. In the petition, petitioner assigns as error (1) the determination that gain was realized from condemnation proceedings in which he lost riparian and littoral rights pertinent to the Mono County property, (2) the failure in determining gain, to consider "basic cost" of the water rights and to include expense incurred in the condemnation proceedings, and (3) the alleged holding that petitioner received any gross amount in 1934 by reason of a judgment since appeal from that judgment was filed and pending on and after December 31, 1934. On his 1935 joint return, the total gross income shown was $55,501.75 of which one item was $55,000, called "damage to property by severance of water rights;" and the total deductions were $55,211.91, of which one item was $55,000, called "damage to property by severance of water rights." The personal exemption of $2,500 more than offset the net income of $289.84 and no tax was shown. A deficiency was determined amounting to $13,130.24 *58 upon an adjusted net income of $62,289.84, computed as follows: (a) Adjustment is made to include profit from the assignment of an interest in a condemnation award made by a jury in October, 1934, for the littoral rights appurtenant to land owned in Mono County, California, as indicated below. This item was improperly reported on your return for the year as a nontaxable transaction by the incorrect designation as income from damage to property by severance of water rights in an amount of $55,000.00, and the deduction of a corresponding amount designated by the same description. The correct income from this source is set forth below. Cash received from the Southern Sierras Power Company for the assignment of interest
in a condemnation award against the City of Los Angeles, California
$66,625.00
Less: Attorney's fees paid during 1935 in connection with the assignment of the award
5,625.00
Capital net gain, 100% subject to tax
$61,000.00 The assigned errors in the determination are (1) that petitioner derived any profit whatever from condemnation proceedings, and (2) the omission of basic cost of condemned water rights and the inclusion of only part of expenses of the *59 condemnation proceedings. By an amendment filed at the hearing, an additional error was assigned in the failure to apply a capital gain rate of 30 per cent to the gain determined for 1935. At the opening of the trial, respondent expressly "withdrew the fraud issue" and no evidence as to fraud was introduced. The issue is, therefore, out of the case, and no penalty addition to the deficiency may be assessed for either year. Much of the time and testimony of the trial was devoted to proof of detailed construction costs during the years 1919-1935, all of which was disputed by respondent and all of which was objected to both generally and specifically. After the trial, counsel at the Court's suggestion, agreed upon a summation of this evidence, and a finding has been made that the total cost of the construction work of the main and lateral feeder ditches was $57,108.70. This finding, however, has no usefulness in the view we take of the case. We must preface the discussion by saying that the contentions are not clearly defined and have not been uniformly or consistently maintained or clearly expounded. Petitioner received condemnation awards of $68,000 for the riparian rights and $20,000 *60 for the littoral rights appurtenant to the 480 acres on Mono Lake which had been received in 1918 in consideration for his promise to do the construction job. The question is as to the gain from these awards, and the ordinary approach is to compare the amount received with the cost of the property condemned and treat the difference as gain or loss. This would seem to have nothing to do with the cost of petitioner's performance of a contract for construction on other property. But petitioner argues as if all of his cost of constructing the main and lateral ditches, whether on his own property or on property of others, is involved in ascertaining his gain or loss. The nature and design of petitioner's venture are not easily understood and therefore afford no help in considering a correct theory upon which to determine his income. In 1918, he had received the consideration for his promise to construct the canal in three years. The Mono Valley Improvement Company with which the contract was made has apparently long since gone out of existence. Petitioner had sold some of the shares of the Rush Creek corporation, and respondent suggests that petitioner's venture was to derive a profit *61 from the shares. This petitioner resents, but offers no other explanation. If that were the fact, it can only be said that some of the Rush Creek shares and the Sierra Land shares are still owned by him and are not the subject of gain or loss in the condemnation award from the water rights on the 480 acres. Although petitioner in his pleading and at the trial suggested that he was contesting the determination that taxable gain was realized in 1934, he makes no such contention in his brief, but confines his argument to an attack on minor details of the computation. Specifically he seeks to increase the condemnation expenses relying on evidence of additional payments, and he seeks also to increase the basis for gain in the award for riparian rights. Upon the evidence we have found (as conceded by respondent) $28,948.40 as the amount of expenses paid by petitioner in 1934 in connection with the condemnation proceedings and $2,957 as the value of the riparian rights at the time of petitioner's acquisition. Since these two figures are larger than those used in determining the deficiency, the taxable gain for 1934 should be recomputed accordingly. The contention that amounts paid for rent *62 and telephone are proper expenses of the condemnation proceedings incurred and paid in 1934 is rejected. The office and telephone were maintained by petitioner regularly before, during, and after the condemnation proceedings. They were, therefore, ordinary and necessary expenses of his regular business rather than expenses specifically connected with the condemnation, and are deductible from gross income and not a factor of capital net gain. As to 1935, the $66,625 received as a result of the condemnation proceedings is taxable as capital gain. This the petitioner does not contest. The amount is not in dispute and the deduction of $5,625, paid as attorney's fees in that year, is regarded by each party as proper. Petitioner contends, however, that only 30 per cent of the resulting net gain of $61,000 is taxable, and not the entire 100 per cent, as respondent has determined. Since $5,625 of the gross proceeds represented an impounded portion of the $68,000 award, it was obviously in payment for riparian rights held over 10 years and is, as was the portion received in 1934, subject to the 30 per cent limitation. In his brief respondent concedes that the $20,000 received expressly for *63 petitioner's assignment of his interest in the judgment award for littoral rights constituted proceeds from the disposition of a capital asset held over 10 years and that gain on it is taxable only to the extent of 30 per cent, and we so hold. The $41,000 received by petitioner in 1935 was not received from the city, which acquired his rights, but from Nev-Cal Securities Company. The payment was expressly described as consideration for the dismissal of the appeal. Relying on this characterization, respondent now argues that it is taxable as ordinary income. Petitioner insists that it was received as consideration for his water rights; that the mere "mechanics of payment" are immaterial, and that it should serve as a factor in the computation of capital gain realized in 1935, being in reality consideration for the disposition of littoral rights. The character of the $41,000 payment appears in its declared purpose. The $20,000 was the compensation for littoral rights; the $41,000 was the consideration for dismissal of the appeal. The two were separate and their different characters may not be ignored for tax purposes; ; *64 . "The choice of disregarding a deliberately chosen arrangement" is not available to the taxpayer. . There is no lack of substance in the characterization of the $41,000 as consideration for dismissal of the appeal. Prosecution of the appeal would have delayed settlement for very valuable water rights which the city was acquiring from Nev-Cal Securities Company and other power companies and the amount of condemnation awards to others was to be a factor in determining the amount which Nev-Cal would receive from the city for its own lands and water rights. Hence, Nev-Cal had a substantial economic stake in the speedy settlement of condemnation awards and in keeping them down to a minimum. These economic benefits were a reason for Nev-Cal's payment of the amount and give it its character. As consideration received for petitioner's forbearance to exercise a legal right, it is ordinary income. A substantial part of the evidence was given to establish costs incurred during the years 1919-1935, in carrying out the contract with the Mono Valley Improvement Company *65 to construct a thirty-mile canal in Mono Basin. During the trial, petitioner's counsel contended, over respondent's objection, that evidence of these costs was relevant to establish basis for gain or loss in the condemnation award for the riparian rights and the littoral rights appurtenant to the 480. acres. In his brief petitioner does not suggest that such costs should serve to increase the basis for the water rights condemned, but uses them instead as a factor in the computation of a claimed "loss from construction costs in the year 1935, when he abandoned further work." He computed the loss by subtracting from the total cost the amounts which be collected in earlier years on the notes and proceeds from the sale of Rush Creek Company shares and the later sale of the 480 acres without water rights, - in short, the amount realized from the disposition of all the items received in 1918 as consideration for his promise to construct the canal, leaving out the awards for the condemned water rights. Such a claim is first asserted in petitioner's original brief and is not covered by any assignment of the petition. In his reply brief, he asserts a claim to the use of the completed contract *66 basis in computing the income resulting from the performance of the construction work. He keeps no books and prior to 1934 he filed no income tax returns. His returns for 1934 and 1935 were prepared on the cash basis. In the absence of a well-adopted accounting method on the completed contract basis, he may not accumulate expenses of earlier years for deduction in the later year. He never adopted the completed contract basis and has failed to establish any foundation for the use of that basis now. He has maintained no accounting system, a necessary prerequisite for its use, , and his tax returns for 1934 and 1935 make no reference to the choice of such a basis, Articles 42-4, Regulations 86; cf. ; , even if such choice could be held to survive the fourteen years for which no returns were filed. It seems doubtful indeed that the proven costs are all related to the contract of 1918 which was to be completed in three years and made no reference to feeder ditches. No loss deduction is allowable. *67 Decision will be entered under Rule 50.